UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| OSCAR LONGORIA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. M-07-48 |
| § | |
| U.S. LIQUIDS OF LOUISIANA, LP § | |
| (USLL), *et al*, § | |
| § | |
| Defendants. § | |

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

Now before the Court for consideration is Defendants' Motion for Summary Judgment.  (Doc. 10).  Plaintiff Oscar Longoria originally brought suit on January 18, 2007 in the County Court at Law of Starr County, Texas.  (Doc. 1).  Plaintiff claims that Defendants U.S. Liquids of Louisiana, LP and ERP Environmental Services, Inc. (collectively referred to herein as "USLL") terminated his employment because of his age, in violation of the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code § 21.001, *et seq. Id.*  Defendants removed the case to this Court on March 1, 2007 on the grounds that the Court has diversity jurisdiction over the action.  *Id.*[1]  Defendants now move for summary judgment, claiming that no evidence exists that Defendants' reasons for terminating Plaintiff's employment were pretext for age discrimination.  (Doc. 10).

---

[1] The parties do not dispute that the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332, 1441.

## II.     Defendants' Motion for Summary Judgment

### A.     Summary Judgment Standard of Review

A district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). At the summary judgment stage, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 249; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. In other words, "the court should give credence to the evidence favoring the nonmovant as well as that evidence

supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (internal quotations omitted).

**B.   *McDonnell Douglas* Burden-Shifting Framework for TCHRA Discrimination Claims**

The TCHRA provides that an employer may not discharge an employee on the basis of his age. TEX. LABOR CODE ANN. § 21.051 (Vernon 2006). Protection from age discrimination is limited to individuals who are 40 years of age or older. TEX. LABOR CODE ANN. § 21.101 (Vernon 2006). Under the well-established framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff claiming age discrimination must first establish a *prima facie* case by showing that he (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which he was discharged; and (4) was replaced by someone outside the protected class or someone younger, or otherwise discharged because of his age. *E.g.*, *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005)(applying *McDonnell Douglas* framework to TCHRA claim at summary judgment stage). Once the plaintiff has satisfied his *prima facie* burden, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the discharge. *Id.* The burden on the employer at this stage is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

If the defendant comes forward with nondiscriminatory reasons, a plaintiff alleging discrimination under the TCHRA is then required to show either (1) the reasons were pretext for discrimination or (2) even if the reasons were true, another motivating factor was age. *Machinchick*, 398 F.3d at 356; *see* TEX. LABOR CODE ANN. § 21.125(a)(Vernon 2006)(unlawful employment practice established when complainant

3 / 18

demonstrates that age was "a motivating factor" for employment practice, even if other factors also motivated practice). The Texas Supreme Court has held that under either alternative, the plaintiff need only show that age was "a motivating factor," not the sole reason, for his discharge. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479-80 (Tex. 2001)(plain meaning of § 21.125(a) establishes "a motivating factor" as plaintiff's standard of causation in TCHRA unlawful employment practice claim, "regardless of how many factors influenced the employment decision"); *accord Pineda v. United Parcel Serv.*, 360 F.3d 483, 488 n.4 (5th Cir. 2004)("a motivating factor" causation requirement applicable in both pretext and "mixed motive" employment discrimination cases where § 21.125(a) is applicable).[2]

The Texas Supreme Court in *Quantum* further directed that "[p]roving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination." *Quantum*, 47 S.W.3d at 481-82. This is consistent with the Fifth Circuit's directive that a factfinder may infer discrimination from "[e]vidence demonstrating the falsity of the defendant's explanation, taken together with the *prima facie* case," even in the absence of additional evidence of the defendant's true motive. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)(citing *Reeves*, 530 U.S. at 147-48). In other words, "'once the employer's justification has been eliminated, discrimination may well be the most likely alternative.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)(quoting *Reeves*, 530 U.S. at 147-48). "Thus, the plaintiff can survive summary judgment by producing

---

[2] In doing so, the Texas Supreme Court did not eliminate the pretext requirement; rather, it clarified that a plaintiff can establish that discrimination was "a motivating factor" for the employment decision by showing that the employer's articulated reasons for that decision were pretext. *See Quantum*, 47 S.W.3d at 480-81.

evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897. A showing of pretext may not be sufficient to infer discrimination in the "rare" case in which (1) "the record conclusively reveals some other, nondiscriminatory reason for the employer's decision" or (2) "the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred." *Laxton*, 333 F.3d at 578-79 (citing *Reeves*, 530 U.S. at 148). "[W]hether judgment as a matter of law is appropriate ultimately turns on 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.'" *Laxton*, 333 F.3d at 579 (quoting *Reeves*, 530 U.S. at 148-49).

**C.     Application of Burden-Shifting Framework to Present Case**

**1.     *Prima Facie* Case**

Here, Defendants concede that Plaintiff has established a *prima facie* case of age discrimination. (Doc. 10). The parties do not dispute that Plaintiff, the site manager for USLL's Rincon facility,[3] was terminated from his position on or about April 11, 2006 at the age of 52 and replaced with his 37-year-old former assistant. (Doc. 10, Ex. A at Ex. 3; Doc. 10, Ex. B at 36; Doc. 11, Ex. A at 6; Doc. 11, Ex. B at 61; Doc. 11, Ex. C at 7, 17, 20).[4]

---

[3] USLL is a company that focuses on the treatment and disposal of non-hazardous oil field waste. (Doc. 10, Ex. B at 15). The Rincon facility is one of six USLL treatment and disposal facilities. *Id.*

[4] More specifically, Plaintiff's supervisor informed Plaintiff on April 11, 2006 that he could either resign from his employment or be terminated. (Doc. 10, Ex. A at 67; Doc. 11, Ex. B at 61).

**2.    Legitimate, Nondiscriminatory Reason for Plaintiff's Discharge**

To meet its burden of production to show a legitimate, nondiscriminatory reason for Plaintiff's discharge, Defendants have produced the deposition transcripts of Plaintiff and Manuel ("Manny") Gonzalez, the supervisor who terminated Plaintiff's employment. (Doc. 10, Exs. A, B). According to the testimony provided, Plaintiff was terminated for what Defendants characterize as "performance deficiencies." (Doc. 10). As detailed *infra*, these alleged deficiencies included failing to process materials fast enough, a conflict with a "major" customer that resulted in the temporary withdrawal of the customer's business, and Plaintiff's calculated absence from a meeting with supervisors. In addition, Gonzalez's deposition transcript includes a copy of a memorandum written by Gonzalez regarding Plaintiff's termination, in which Gonzalez cited deficiencies in Plaintiff's handling of customers and vendors, equipment repairs, commitment to USLL, management of staff, communications, time management, office skills, and site manager duties. (Doc. 10, Ex. B at Ex. 9). A second memorandum and deposition exhibit provides additional background for Gonzalez's cited reasons for Plaintiff's termination. (Doc. 10, Ex. B at Ex. 10). The above evidence is sufficient for a trier of fact to conclude that Defendants terminated Plaintiff's employment for legitimate, nondiscriminatory reasons, and thus Defendants have met their burden. *See Reeves*, 530 U.S. at 142.

**3.    Pretext**

Defendants now move for summary judgment on the grounds that Plaintiff cannot meet his ultimate burden to show that the above-proffered reasons for his termination were pretext for age discrimination. (Doc. 10). In response, Plaintiff presents evidence

---

Plaintiff signed a resignation letter drafted by his supervisor and dated April 12, 2006. (Doc. 10, Ex. A at 67-68, Ex. 3; Doc. 11, Ex. B at 61).

that he claims raises a genuine issue of material fact regarding whether these reasons were false and whether age motivated the employment decision at issue. (Doc. 11; Doc. 11, Exs. A, B, C). The Court will review the evidence submitted by the parties herein.

### a.     Summary Judgment Evidence Relevant to Pretext Inquiry

Plaintiff worked for USLL at the Rincon facility from November 1997 to April 2006. (Doc. 10, Ex. A at 17, 65, Ex. 3). At the time USLL employee Jerry Brazzell hired him, Plaintiff was 44 years old. (Doc. 10, Ex. A at 17, 19). In 2003, at the age of 50, Plaintiff was promoted from operator to site manager by USLL employees Kevin Trahan and Troy LeBoeuf. (Doc. 10, Ex. A at 20, 35; Doc. 10, Ex. B at 36). As site manager for the Rincon facility, Plaintiff was "in charge" of the facility and responsible for its overall operations, including the hiring and supervision of personnel, handling paperwork and maintaining documentation for purchases, repairing equipment, and knowing the policies and procedures at the site. (Doc. 10, Ex. A at 27-29, 34-35, 50, 57; Doc. 10, Ex. B at 36). While site manager, Plaintiff supervised at most about 11 or 12 employees and promoted one, Joel Garza, to be Plaintiff's assistant. (Doc. 10, Ex. A at 28-30).

In about January 2005, Manny Gonzalez became USLL's "vice-president, Texas/Mexico business unit" and Plaintiff's supervisor. (Doc. 10, Ex. A at 36-37; Doc. 11, Ex. B at 13). Gonzalez is approximately four years younger than Plaintiff. (Doc. 10, Ex. B at 9). Trahan and LeBoeuf, both of whom worked in Louisiana, informed Plaintiff that they had hired Gonzalez because they needed a more local supervisor. (Doc. 10, Ex. A at 37).

Plaintiff acknowledged in his testimony that Trahan and LeBoeuf talked with him "once or twice" about "drying materials faster than…we were." (Doc. 10, Ex. A at 41). Plaintiff claimed that Trahan and LeBoeuf expressed no other complaints to him regarding the operation of the Rincon facility. *Id.* According to Plaintiff, Gonzalez verbally counseled Plaintiff about "the same problems"—that is, "the improvement of how to move the material faster, process it faster." (Doc. 10, Ex. A at 41-42, 65). Plaintiff also remembered that Gonzalez verbally counseled him about being more aggressive with vendors. (Doc. 10, Ex. A at 65). Plaintiff did not recall whether he disagreed with these recommendations for improvement, although he explained that rain interfered with his ability to dry the materials. (Doc. 10, Ex. A at 42, 65). Plaintiff also testified that he did not believe the issues verbally raised by Gonzalez constituted "negative performance issues." (Doc. 10, Ex. A at 77).

In contrast with Plaintiff's testimony, Gonzalez testified that he, Trahan, and LeBoeuf verbally counseled Plaintiff about various issues in addition to the processing of materials, including Plaintiff's decision-making capabilities and insufficient communication with supervisors. (Doc. 10, Ex. B at 50-51). A memorandum drafted by Gonzalez on April 9, 2006, approximately two days before Plaintiff's termination, lists additional deficiencies in Plaintiff's performance. (Doc. 10, Ex. B at Ex. 9). As noted above, Gonzalez identified deficiencies in the handling of customers and vendors, equipment repairs, commitment to USLL, management of staff, communications, time management, office skills, and site manager duties. *Id.* Both in a second memorandum and in his testimony, Gonzalez provided additional information concerning the bases for these deficiencies. With respect to the handling of customers, Gonzalez identified an

incident involving Plaintiff and a "major" customer of USLL, Basic Energy. (Doc. 10, Ex. B at 68, Exs. 9, 10). Gonzalez explained that in March 2006, Plaintiff "chewed out" a Basic Energy truck driver for failing to properly fill out a manifest. (Doc. 10, Ex B at 67-68, Exs. 9, 10). As a result, Basic Energy discontinued sending work to the Rincon facility for a short period of time. *Id.* In his testimony, Plaintiff acknowledged that Gonzalez asked him about the incident. (Doc. 10, Ex. A at 48). Plaintiff explained that sometimes he joked around with truck drivers but that he "never did joke or…never did say anything or raise my voice to this particular driver that works with Basic [Energy]." *Id.* According to Plaintiff, Basic Energy was an infrequent customer who continued to do the same amount of business with the Rincon facility subsequent to the alleged incident. (Doc. 11, Ex. A at 49).

Gonzalez noted in his April 9, 2006 memorandum that Plaintiff was often away from the facility running errands and took days off without approval. (Doc. 10, Ex. B at Ex. 9). In his additional memorandum and testimony, Gonzalez further explained that in March 2006, Gonzalez and USLL employees Wayne Crawley and Kevin Matte met with Plaintiff and Plaintiff's assistant, Joel Garza, for the purpose of working on the semi-annual report required by the relevant regulatory agency. (Doc. 10, Ex. B at 46, 53-54, Ex. 10; Doc. 11, Ex. B at 43). Plaintiff identified Crawley as the "compliance manager" responsible for human resources or personnel functions at the site. (Doc. 10, Ex. A at 35). Gonzalez, however, attributed this job description to USLL employee Carol Parmer, and in fact Plaintiff admitted that Crawley did not hire Plaintiff, supervise his duties at the site, or provide him with any performance evaluation. (Doc. 10, Ex. A at 76; Doc. 10, Ex. B at 35). Gonzalez described Crawley's job with USLL as "head of compliance to

State and regulatory matters" who provided "internal consulting for each site manager and each manager" on environmental, compliance, and regulatory issues. (Doc. 10, Ex. B at 36).

According to Gonzalez, Plaintiff chose to leave the facility to purchase a printer cartridge rather than work on the report. (Doc. 10, Ex. B at 46-48, Ex. 10). Gonzalez indicated in his testimony that the remaining employees were unable to continue the meeting without Plaintiff. (Doc. 10, Ex. B at 45). Gonzalez stated in his memorandum that he believed that Plaintiff "did not care to participate with [Crawley's] discussion regarding the semi-annual reports because he lacked the understanding and did not want to learn the requirements of such reports." (Doc. 10, Ex. B at Ex. 10). Therefore, Plaintiff left to get the printer cartridge in an effort to "minimize 'face time' with the visiting managers so as not to participate with the efforts at hand." *Id.* In contrast to Gonzalez's version of the incident, Plaintiff testified that when the printer cartridge ran out during the meeting, Plaintiff asked Crawley if he should leave to get a new cartridge or if he should send Garza. (Doc. 10, Ex. A at 53). According to Plaintiff, Crawley instructed Plaintiff to run the errand because Plaintiff was "too old to learn" how to use the computer. (Doc. 10, Ex. A at 53-54). Plaintiff testified that he believes that Crawley is over 40 years old. (Doc. 10, Ex. A at 36). When asked in his deposition if he thought Crawley was "just joking around" with Plaintiff, Plaintiff responded that USLL was supposed to provide him with computer training but that "they kind of got in a hurry and got rid of me before anything like that happened." (Doc. 10, Ex. A at 54). *Id.* Plaintiff's assistant and eventual replacement, Joel Garza, testified that Gonzalez trained Garza on the computer. (Doc. 11, Ex. C at 7-8). Gonzalez admitted in his deposition that the

printer stopped working in the middle of the meeting, although he did not remember hearing Crawley's alleged comments to Plaintiff. (Doc. 10, Ex. B at 48; Doc. 11, Ex. B at 44).

Gonzalez also stated in his memorandum and testified that the day after the above incident, with the managers still present at the facility to work on the semiannual report, Plaintiff called Garza to report that he was sick and would not be coming to work. (Doc. 10, Ex. B at 96, Ex. 10). Gonzalez represented that Plaintiff violated USLL policy, of which he was aware, by failing to notify his immediate manager of his absence from work due to illness. *Id.* Gonzalez opined that he believed Plaintiff's "intent was not to participate in the activities at hand while the manager's (sic) were at or around the location." (Doc. 10, Ex. B at Ex. 10). Gonzalez further noted that Plaintiff "was well the next day and came to work." *Id.* In contrast to Gonzalez's testimony, Plaintiff stated in his deposition that he never took a day off work without calling Gonzalez. (Doc. 10, Ex. A at 57).

Gonzalez's memoranda also cited Plaintiff's failure to make timely equipment repairs as one of the performance deficiencies leading to his termination. (Doc. 10, Ex. B at Exs. 9, 10). According to Plaintiff, Gonzalez never advised Plaintiff of this concern. (Doc. 10, Ex. A at 57; Doc. 11, Ex. A at 58).

Gonzalez testified that from about January to April 2006, he discussed his concerns about Plaintiff's performance on several occasions with USLL President William Werdenberg. (Doc. 10, Ex. B at 63). Gonzalez ultimately recommended Plaintiff's termination and Werdenberg approved. (Doc. 10, Ex. B at 64). Subsequent to the decision to terminate Plaintiff, Gonzalez set forth the reasons for Plaintiff's

termination in the memorandum dated April 9, 2006. (Doc. 10, Ex. B at Ex. 9; Doc. 11, Ex. B at 65). On April 11, 2006, Gonzalez met with Plaintiff to inform him of the decision. (Doc. 11, Ex. B at 61). At Gonzalez's request, USLL salesperson Gary Valenta also attended the meeting. (Doc. 10, Ex. A at 66; Doc. 10, Ex. B at 62). Gonzalez informed Plaintiff of the decision to terminate Plaintiff's employment and gave Plaintiff the option to resign. (Doc. 10, Ex. A at 67; Doc. 11, Ex. B at 61). Plaintiff then signed the letter of resignation drafted by Gonzalez and dated April 12, 2006. (Doc. 10, Ex. A at 67-68; Doc. 11, Ex. B at 61).

According to Plaintiff, Gonzalez told him at the meeting that "[t]here was (sic) a lot of projects coming up, and that they thought it was something I could not handle, and that they had decided that I would have to leave." (Doc. 10, Ex. A at 67). Plaintiff testified that Gonzalez offered to further explain the reasons for his termination but Plaintiff did not wish to hear the reasons. (Doc. 10, Ex. A at 67-68). According to Plaintiff, "[i]t made no difference to me whether I heard why or why not. It was a decision already made by then…." (Doc. 10, Ex. A at 68). Plaintiff claimed that he asked Gonzalez if he could continue working for the company in another capacity, but Gonzalez refused. (Doc. 11, Ex. A at 71). According to Gonzalez, no other positions were available. (Doc. 11, Ex. B at 105). Upon Plaintiff's termination, Plaintiff was replaced by his 37-year-old former assistant, Garza. (Doc. 11, Ex. C at 7, 17, 20).

In order to show that age motivated Gonzalez's decision to terminate Plaintiff's employment, Plaintiff mostly relies on evidence of the falsity of Gonzalez's stated reasons for that decision. (Doc. 11). As discussed *supra*, Plaintiff's deposition testimony refuted Gonzalez's version of certain of the events allegedly leading to Plaintiff's

termination. Also as discussed above, Plaintiff denied receiving verbal counselings about most of the performance issues cited by Gonzalez as reasons for Plaintiff's termination. Plaintiff further points out that Gonzalez admitted in his testimony that USLL's Employee Handbook requires oral warnings "for infractions that are considered minor in nature" and written reprimands "for repeated minor infractions or for infractions of a more serious nature." (Doc. 11; Doc. 11, Ex. B at 53, Ex. 3). Gonzalez testified that he never issued any written reprimands to Plaintiff, nor was he aware of any written documentation indicating that he or others had counseled Plaintiff regarding performance deficiencies. (Doc. 10, Ex. B at 49; Doc. 11, Ex. B at 53-54). As noted *supra*, Gonzalez prepared the written memorandum listing Plaintiff's alleged performance deficiencies on April 9, 2006, shortly before Plaintiff's termination and after the decision had been made to terminate Plaintiff's employment. (Doc. 10, Ex. B at Ex. 9; Doc. 11, Ex. B at 65).

Plaintiff also offers evidence that Gonzalez's own evaluation of Plaintiff shows overall improvement in Plaintiff's performance from 2004 to 2005. (Doc. 11; Doc. 11, Ex. B at Exs. 12, 13). In Plaintiff's 2004 performance review, Gonzalez's predecessor, LeBoeuf, ranked Plaintiff as meeting expectations in nine categories and performing below expectations in one category: cost control/efficiency. (Doc. 11, Ex. B at 110, Ex. 12). The following year, Gonzalez ranked Plaintiff as exceeding expectations in two categories, meeting expectations in seven categories, and performing below expectations in one category: attitude. (Doc. 11, Ex. B at 115-16, Ex. 13). In contrast to the prior evaluation, Gonzalez ranked Plaintiff as meeting expectations in cost control/efficiency. (Doc. 11, Ex. B at Exs. 12, 13). The Court notes that Gonzalez attributed some of this improvement to Gonzalez's more active role in this area of performance. (Doc. 11, Ex. B

at 116-17). The Court further notes that Gonzalez's evaluation, dated January 2006, made various recommendations for improvement in Plaintiff's job performance. (Doc. 11, Ex. B at Exs. 12, 13).

Plaintiff also offers evidence that he received performance-based bonuses in 2006 and a raise approximately one month before his termination. (Doc. 11; Doc. 11, Ex. B at 128-33, Exs. 17, 19). Plaintiff provides documentation, and Gonzalez testified, that USLL's incentive plan allowed Plaintiff to receive bonuses if the site met certain criteria, and that Plaintiff received these bonuses in 2006. (Doc. 11, Ex. B at 129-32, Exs. 18, 19). Also in 2006, Plaintiff received two additional bonuses for oil recovery at the facility and for safety. (Doc. 11, Ex. B at 132-33, Ex. 19). Plaintiff also submitted a copy of a letter from USLL President and CEO Werdenberg informing Plaintiff that he would receive a raise, effective March 5, 2006, "[b]ased on the recommendation of [Plaintiff's] supervisor." (Doc. 11, Ex. B at Ex. 17).

Finally, Plaintiff submits the testimony of Joel Garza, Plaintiff's former assistant and eventual replacement, in which Garza admitted that he did not have any particular concerns about Plaintiff's performance. (Doc. 11; Doc. 11, Ex. C at 17). Garza further testified that he was surprised when he discovered that he would be replacing Plaintiff. (Doc. 11, Ex. C at 20-21).

In addition to presenting evidence that he claims negates Gonzalez's reasons for terminating Plaintiff's employment, Plaintiff points to the comment by Crawley and USLL's failure to train him on the computer, discussed *supra*, as some evidence that age motivated the termination decision. (Doc. 11).

**b.      Analysis**

Upon review of the evidence submitted by the parties, the Court must conclude that Plaintiff has at least raised a genuine issue of material fact regarding whether Gonzalez's stated reasons for Plaintiff's termination were false and pretext for age discrimination.  The Court recognizes that Gonzalez's testimony and written memorandum cite legitimate, nondiscriminatory reasons for Plaintiff's termination. However, this evidence comes from an interested witness, and Defendants offer no independent verification of Gonzalez's reasons for the employment decision at issue other than Plaintiff's own testimony.  Plaintiff admitted in his testimony that his supervisors, including Gonzalez, counseled him about drying materials faster, and that Gonzalez talked to him about being more aggressive with vendors.  Apart from these admissions, Plaintiff disputes that Gonzalez or anyone else counseled Plaintiff about additional performance issues.  In addition, Plaintiff controverts Gonzalez's version of certain of the events cited by Gonzalez as reasons for Plaintiffs termination—more specifically, the dispute with the Basic Energy truck driver and Plaintiff's absence from the semiannual report meeting.  At this stage of the proceedings, the Court may not choose to believe Gonzalez's version; rather, it must resolve all doubts in favor of Plaintiff.

In addition to his own testimony, Plaintiff has produced evidence of USLL's Employee Handbook procedures indicating that in most circumstances, oral warnings are given to USLL employees for minor infractions and written reprimands for repeated minor infractions or for infractions of a more serious nature.  The evidence before the Court further indicates that Plaintiff never received any written reprimands.  Given the

above, a jury could reasonably find that any performance issues raised in verbal communications between Plaintiff and his supervisors were minor and isolated in nature, and thus insufficient explanation for Plaintiff's termination. In addition, the absence of any warnings, verbal or otherwise, concerning additional stated reasons for Plaintiff's termination could permit the inference that these reasons were false.

The Court further notes that Plaintiff has provided documentary evidence that his overall performance rankings improved from 2004 to 2005 and that he received performance-based bonuses and a raise in 2006. In addition, Plaintiff has presented the testimony of Plaintiff's former assistant, Garza, in which Garza stated that he had no specific concerns regarding Plaintiff's performance and that he was surprised when he discovered that he would be replacing Plaintiff. Admittedly, Plaintiff's performance reviews also contained recommendations for his improvement, and Plaintiff received the bonuses based on the performance of the site. In addition, Garza's statements provide only meager support for Plaintiff's assertions of pretext. However, taken as a whole, Plaintiff's evidence at least raises a genuine issue regarding the legitimacy of the proffered reasons for his termination.

As explained *supra*, a jury may infer discrimination from evidence demonstrating the falsity of the employer's reasons for the employment decision at issue, taken together with the *prima facie* case. In any event, the Court notes that Plaintiff has attempted to submit at least some additional evidence that Defendants' proffered reasons were pretext *for* age discrimination. When directly asked, Plaintiff had difficulty articulating why he believed age motivated Defendants' decision to terminate his employment. (Doc. 10, Ex. A at 72; Doc. 11, Ex. A at 73). However, Plaintiff has drawn the Court's attention to his

testimony regarding the comment by Crawley that Plaintiff was "too old to learn" how to use the computer. In itself, this comment does not suffice to raise a fact question regarding discriminatory intent, given that the record does not show that Crawley had any influence over the decision to terminate Plaintiff's employment. See *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225-29 (5th Cir. 2000)(remark probative of discriminatory intent if speaker is in position to influence decision); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000)(remark made by person not directly connected with employment decision not enough to raise fact question regarding pretext). Nonetheless, Plaintiff has also provided testimony indicating that USLL promised to provide him with computer training and failed to do so before terminating his employment. In addition, Plaintiff presented the testimony of his former assistant, Garza, indicating that Gonzalez provided computer training to Garza. Therefore, Plaintiff has presented at least some evidence that the person responsible for recommending and carrying out his termination treated him differently than his younger replacement.

In sum, this is not the "rare" case in which a showing of pretext would not permit an inference of discrimination. The record does not conclusively reveal another, nondiscriminatory reason for Plaintiff's termination, nor is the evidence "abundant and uncontroverted" that Defendants did not discriminate against Plaintiff on the basis of his age. Defendants cite to the Fifth Circuit's statement in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) that "[t]he fact that the actor involved in [an employee's hiring and firing] is also a member of the protected class" enhances the inference that age did not motivate the employment decision at issue. However, the inference to which *Brown* refers is created where the *same* actor hires and fires an employee. (Doc. 10); *Brown*, 82

F.3d at 658. In any event, the court in *Brown* did not rule out the possibility that a plaintiff could demonstrate discrimination even in this context. *Id.* As Plaintiff has established his *prima facie* case and has provided sufficient testimony and documentary evidence to raise genuine issues of material fact regarding pretext, the Court will allow Plaintiff to proceed with his TCHRA claim.

### III.  Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Motion for Summary Judgment is hereby **DENIED**.

SO ORDERED this 20th day of June, 2008, at McAllen, Texas.

_____
Randy Crane
United States District Judge